STATE OF NEBRASKA, APPELLEE, V. CORELIA THREET, APPELLANT.

407 N.W.2d 766

Filed June 19, 1987.   No. 86-729.

Richard M. Fellman of Fellman Law Offices, for appellant.

Robert M. Spire, Attorney General, and Lynne R. Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Defendant, Corelia Threet, appeals her conviction in the district court for Douglas County of murder in the second degree and use of a firearm during the commission of a felony in connection with the February 2, 1986, shooting death of Steven W. Johnson. The defendant was sentenced to imprisonment in the Nebraska Center for Women for a period of 30 years on the conviction of second degree murder and not less than 5 nor more than 10 years on the conviction of use of a firearm during the commission of a felony. On appeal, the defendant alleges the trial court erred in failing to properly instruct the jury on accidental shooting, when evidence thereof

was submitted, and in failing to rule on defendant's motion in limine in sufficient time to allow the defendant to present an orderly defense. The defendant further contends the court erred in failing to impanel a new jury after the State peremptorily challenged all black prospective jurors called to sit in the case, and in allowing into evidence an inflammatory and unnecessary photograph of the victim. Finally, the defendant contends the court committed reversible error in allowing the State to pursue improper redirect examination of a witness and in overruling defendant's objection concerning improper cross-examination of a defense witness. For the reasons hereafter stated, the judgment and sentence of the district court are affirmed.

There is little dispute concerning the events that led up to the actual shooting. Defendant admits to having shot the victim. The only issue at trial was whether the defendant had the requisite intent to kill, or whether the shooting was accidental as the defendant contends. The record shows that on February 2, 1986, the day of the shooting, the defendant and several friends decided to have a cookout. The day was unusually warm. The cookout took place at defendant's residence in Omaha, Nebraska. The defendant, with her boyfriend, Tony Williams, and his sister, Darlene Williams, went to the store to buy food and alcohol for the cookout. The defendant paid for the groceries as well as a rose given to her by Tony Williams. The group was joined at the defendant's home by the victim, Steven Johnson. Also present at the cookout were two other couples, Fred Moore and Margaret Watkins, and Carol and Janet Perkins.

At approximately 6 p.m., Carol and Janet Perkins left. Shortly thereafter, Fred Moore and Margaret Watkins left, after Moore borrowed the defendant's car to drive Watkins to work. The defendant, Tony Williams, Darlene Williams, and the victim remained at the cookout. The four then discussed going to a movie. It is at this point that the facts are in dispute. Tony Williams testified that an argument arose between himself and the defendant over the defendant's having loaned her car to Moore. The witness testified that the defendant went upstairs to change and when she came downstairs she began to yell at him

to get out of the house. When the witness attempted to take the rose that he had earlier given to the defendant, the defendant slapped it, causing the vase to fall and break. Tony Williams testified that the victim grabbed him by the arm and took him outside to cool off, and as the two men were walking from the house Tony Williams heard a gunshot and saw the victim fall to the ground. When Williams turned toward the house, he saw the defendant standing in the doorway, holding a gun.

This testimony was corroborated by Darlene Williams, who testified she was present at the time of the shooting and that an argument took place between the defendant and Tony Williams. Darlene Williams further testified that as the victim and Tony Williams were leaving, she saw the defendant pull a gun from defendant's blouse, step out the back door, and fire the gun. Immediately after the shot, the defendant told Ms. Williams she had shot the victim and that Ms. Williams had better call for an ambulance.

Testifying on her own behalf, the defendant said that she did not want to go to the movies because she did not want to spend any more money. Defendant further testified that Tony Williams was angered by defendant's refusal to go to the movies, threw the flower to the ground, and left with the victim. The defendant testified that approximately 10 to 20 minutes after the two men left, she was watching television, when she heard a noise coming from the back which she presumed was someone trying to enter her house. Defendant stated she then went to the back door, took a gun from a drawer, and, while standing inside, fired a shot into the air to scare off whoever was in her yard. According to the defendant, she then heard the victim call out that he had been shot. The defendant then told Darlene Williams, who, according to the defendant's testimony, had been upstairs when the shooting took place, to call an ambulance.

Other witnesses for the State included Officer Chris Toledo of the Omaha Police Division, Omaha Police Sgt. Robert Schafer, and Dr. Clarence McWhorter, the pathologist who performed the autopsy. Officer Toledo testified that when he arrived at the scene, he entered the defendant's home and asked her what happened. The defendant responded, "I shot the

m— f—, I know I did but it was an accident." Dr. McWhorter testified the cause of death was exsanguinating hemorrhage, secondary to disruption of blood vessels and disruption of the bowel as a result of the gunshot wound. The bullet entered the victim's back just below the waistband of his pants. When asked if he could testify as to the angle of the flight of the bullet, Dr. McWhorter stated that the bullet traveled at a downward angle of approximately 15°. The witness further testified that the wound was consistent with that which would have been received if the person firing the gun was standing at a higher point than the victim.

At the close of the evidence, the matter was submitted to the jury. The jury returned a verdict of guilty on the charges of both murder in the second degree and use of a firearm during the commission of a felony.

The defendant first assigns as error the district court's failure to properly instruct the jury on accidental shooting, when evidence thereof was submitted to the court. In Nebraska, it is the duty of the trial court, upon the request of the accused, to instruct the jury on her theory of the case if there is evidence to support it. *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984). However, a tendered instruction, otherwise appropriate, which either misstates the law or tends to confuse or mislead the jury should not be given by the trial court. *State v. Taylor*, 221 Neb. 114, 375 N.W.2d 610 (1985); *State v. Samuels*, 205 Neb. 585, 289 N.W.2d 183 (1980). It is not error for the court to refuse to give the defendant's requested instruction when the substance of the requested instruction is covered by the instructions given. *State v. Samuels, supra.* In the case at bar the defendant offered an instruction which read in part, "[I]f you find the Defendant's shooting was accidental you should find the Defendant innocent." This instruction was refused. Instead, the court gave instruction No. 4, which explained the material elements the State needed to prove in order for the jury to find the defendant guilty of murder in the second degree or, as a lesser-included offense, manslaughter. Additionally, the court's instruction No. 8 defined murder in the second degree as causing the death of a person "intentionally, but without premeditation," and instruction

No. 9 defined the lesser-included offense of manslaughter. Finally, the court's instruction No. 11 defined "intentionally" to mean "willfully or purposely and not accidentally or involuntarily." These instructions, when read as a whole, correctly state the law and adequately cover the issues. The defendant's proposed instruction could have led to confusion of the jury, since nothing is said concerning the lesser-included offense of manslaughter. We have held that all jury instructions must be read together, and if the instructions when taken as a whole correctly state the law, are not misleading, and adequately cover the issues, there is no prejudicial error in not giving a defendant's proposed instruction. *State v. Clayburn*, 223 Neb. 333, 389 N.W.2d 314 (1986).

The defendant next assigns as error the trial court's failure to rule on defendant's motion in limine in sufficient time to allow the defendant to present an orderly defense. The defendant had made a motion in limine in order to keep out testimony on cross-examination of a proposed defense witness, Edward Threet. Threet, the defendant's ex-husband, was to testify concerning the dimensions of defendant's kitchen and back porch. Defense counsel wanted to avoid any inquiry by the State concerning an earlier assault charge against the defendant arising out of an incident in which the defendant shot Edward Threet in the chest. The trial court reserved ruling on the matter until the issue actually arose at trial. The trial court announced that it would permit the prosecution to inquire into these matters only if Edward Threet testified concerning the defendant's inability to use a weapon or defendant's peaceful nature. The defendant's argument that the court's reserved ruling was error is without merit. Defendant could have relied on this announcement of the court to enable her to call Edward Threet and limit his testimony to the dimensions of the kitchen and back porch. See *State v. Borchardt*, 224 Neb. 47, 395 N.W.2d 551 (1986). Instead, the defendant decided not to call the witness. It was this decision of the defendant, not the court's ruling, that prevented the witness from testifying. It is the law in Nebraska that error may not be predicated upon a ruling unless a substantial right of the party is affected. Neb. Rev. Stat. § 27-103(1) (Reissue 1985). See, also, *Bernadt v. Suburban Air,*

*Inc.*, 221 Neb. 537, 378 N.W.2d 852 (1985). The court's ruling in this matter did not substantially affect a right of the defendant; therefore, the court did not err in reserving its ruling until the issue arose at trial.

The defendant next assigns as error the trial court's failure to strike the jury and impanel a new jury after the State peremptorily challenged all black members of the prospective jury. The defendant relies on *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), where the U.S. Supreme Court recognized that a state denies a black defendant equal protection if it puts him on trial before a jury from which members of his race have been purposely excluded. This court followed the *Batson* holding in *State v. Peery*, 223 Neb. 556, 391 N.W.2d 566 (1986). In *Batson* the Court held that a defendant may establish a prima facie showing of purposeful racial discrimination in selection of the jury solely on evidence concerning the state's use of peremptory challenges and that, if a prima facie showing of racial discrimination is established, the burden then shifts to the state to come forth with a neutral explanation for the peremptory challenges. In the present case, the defendant contends the State purposefully discriminated against defendant, who is black, by removing all (in this case, two) black members from the prospective jury. Appellant's assignment of error is without merit. In this case, the State satisfactorily came forward with a neutral explanation for its challenges. The record shows that the State exercised its first and fourth peremptory challenges to remove two black members from the prospective jury. There is no showing that the challenges were racially motivated, in violation of *Batson*. On the contrary, the State explained why each of the two prospective jurors was stricken. The first prospective juror was removed after she had indicated she knew about the case and that her father had lived down the street from the defendant. The second black member of the prospective jury was challenged after he indicated that he knew a neighbor of the defendant who was a potential witness and who had been at the scene after the shooting and remained there while the police conducted their investigation. Absent a showing that the challenges were racially motivated, and in light of the reasons

articulated by the State, the district court did not err in failing to strike the jury and impanel a new jury.

The defendant's final three assignments of error concern the district court's allowing into evidence certain testimony on cross-examination and redirect examination, as well as the admittance of a certain photograph which defendant alleges was inflammatory and unnecessary. We have held that it is within the trial court's discretion to admit or exclude evidence, and such rulings will not be disturbed on appeal absent a showing of abuse of that discretion. *State v. Wilson, ante* p. 466, 406 N.W.2d 123 (1987); *State v. Clancy*, 224 Neb. 492, 398 N.W.2d 710 (1987). Additionally, the extent, scope, and course of cross-examination rest within the discretion of the trial court. *Nixon v. Harkins*, 220 Neb. 286, 369 N.W.2d 625 (1985). After a review of the record, we find no abuse of discretion on behalf of the trial court. The State properly conducted the redirect examination of its witness, Sergeant Schafer, when questioning him about his report after the defendant had initiated questions on the report during cross-examination. As to the State's cross-examination of the defendant regarding previous incidents in which the defendant had allegedly pulled a gun from her purse, the questioning was also proper. While Neb. Rev. Stat. § 27-404(2) (Reissue 1985) prohibits the introduction of prior crimes, wrongs, or acts for the purpose of showing the character of the defendant in order to show that defendant acted in conformity therewith, such evidence may be admitted to prove the absence of mistake or accident. *State v. Wilson, supra*. The defendant's theory of the case is that she accidentally shot the victim. The State properly sought testimony regarding the previous incidents to prove absence of accident.

Finally, the trial court did not abuse its discretion by allowing photographs of the victim into evidence. In homicide cases, photographs of the victim may be received for purposes of identification, upon proper foundation. *State v. West*, 223 Neb. 241, 388 N.W.2d 823 (1986). Additionally, the photographs were relevant to show that the shot that killed the victim had been fired from an elevation higher than the ground on which the victim was standing. The fact that the

photographs may present a gruesome spectacle does not prohibit their admission into evidence. *State v. West, supra*.

In absence of a showing of any error, the judgment of the district court is affirmed.

AFFIRMED.