STATE OF NEBRASKA, APPELLEE, V. AGINALDO ALVARADO, SR., APPELLANT.
410 N.W.2d 118

Filed August 7, 1987.    No. 86-998.

Robert L. Gridley of Atkins Ferguson Zimmerman Carney, P.C., for appellant.

Robert M. Spire, Attorney General, and William L. Howland, for appellee.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, J.

The defendant, Aginaldo Alvarado, Sr., was charged by information with (1) assault on a peace officer, (2) resisting arrest, and (3) obstructing a peace officer. He pleaded not guilty to all three counts.

On October 27, 1986, the case came on for jury selection. Twenty-four prospective jurors were examined on voir dire by the court and counsel for both parties. Both the State and defense counsel passed the jury for cause. Each party then exercised peremptory challenges. The State's third and fifth strikes, respectively, were Thomas Patton, referred to in the record as an "Indian," and Ignacia Diaz, a "Mexican American."

At the conclusion of the peremptory challenges, defense counsel moved for a mistrial, claiming that the State had illegally used its peremptory challenges to systematically strike minorities from the jury. The State responded that it had legitimate reasons for striking both Patton and Diaz from the jury. The court found no systematic discrimination under the circumstances and overruled the motion for a mistrial.

After trial to the jury, the defendant was found guilty of all three counts.

On November 5, 1986, Alvarado filed a motion for new trial, claiming, inter alia, that the trial court had erroneously overruled his motion for a mistrial. Alvarado argued that under *Batson v. Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the State's striking of Diaz by way of peremptory challenge established a prima facie case of purposeful discrimination which the State had failed to rebut. The prosecutor responded that he would stand on his previously stated reasons for excluding both Patton and Diaz.

The trial court overruled the motion for new trial on all grounds after determining that under *Batson, supra,* 1 strike out of 24 jurors could not serve to establish a case of purposeful discrimination. Alvarado was subsequently sentenced to imprisonment for 15 months on count I and to 6 months each on counts II and III, all sentences to run concurrently, and with credit for 7 days in jail.

On appeal, Alvarado contends the trial court erred in: (1)

failing to sustain his motion for mistrial; (2) failing to sustain his motion for new trial; and (3) failing to uphold his constitutional rights as guaranteed by the equal protection clause of the 14th amendment to the U.S. Constitution, as interpreted and applied by the Court in *Batson v. Kentucky, supra*.

Recently, in *State v. Threet*, 225 Neb. 682, 407 N.W.2d 766 (1987), this court applied the guidelines set out in *Batson v. Kentucky, supra*, to determine whether the State had purposefully discriminated on the basis of race by using its peremptory challenges to strike all black members from a jury panel. In *Batson, supra*, the Court held that a black defendant is denied equal protection of the law when the State puts him on trial before a jury from which members of his race have been purposefully excluded. It also held that a defendant may make a prima facie case of purposeful race discrimination in the selection of the jury solely on evidence of the prosecutor's exercise of peremptory challenges at the defendant's trial.

According to *Batson, supra* at 96, to establish such a prima facie case

the defendant first must show that he is a member of a cognizable racial group [citation omitted] and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." [Citation omitted.] Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

Once a prima facie case has been established by the defendant, the burden shifts to the State to show a neutral explanation for its challenge of the jurors in question. *Batson, supra*. While this explanation need not rise to the level of that required to justify a

challenge for cause, the State may not rebut the defendant's prima facie case by stating that jurors of the defendant's race were struck based on an intuitive judgment that they would be partial to the defendant because of their shared race. *Batson v. Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). The prosecutor also may not rebut the defendant's case by merely denying "that he had a discriminatory motive or 'affirm[ing] [his] good faith in individual selections.' " *Batson, supra* at 476 U.S. at 98 (quoting *Alexander v. Louisiana,* 405 U.S. 625, 92 S. Ct. 1221, 31 L. Ed. 2d 536 (1972)). Instead, the prosecutor is required to articulate a neutral explanation related to the case to be tried. *Batson, supra.*

On his motion for a mistrial, defense counsel asked that the record reflect that two members of minorities, a Mexican-American (Diaz) and an Indian (Patton), had been peremptorily challenged by the prosecutor. Defense counsel also argued that neither of the two jurors had been questioned regarding any problems or prejudices he or she might have with the case. On the basis of these facts, defense counsel urged the court to declare a mistrial because recent Supreme Court rulings precluded the prosecutor's use of peremptory challenges to strike members of minorities who might identify with the defendant.

The prosecutor responded that he had in fact questioned the panel which included Diaz. He also stated that he had peremptorily challenged Diaz because he had not received her jury questionnaire, which made her an unknown quantity to him regarding her qualifications to sit on the jury. In fact, the record indicates that the prosecutor addressed questions generally to the jury panel, of which Diaz was a member, on several occasions, and addressed her individually on one occasion.

The court overruled the defense motion, stating that it saw "nothing systematic in this situation."

A motion for a mistrial is addressed to the sound discretion of the trial court, whose ruling will not be reversed on appeal in the absence of an abuse of that discretion. *State v. Clancy,* 224 Neb. 492, 398 N.W.2d 710 (1987).

Applying the guidelines set out in *Batson, supra,* we

conclude that the trial court did not abuse its discretion in overruling the defendant's motion. Apart from evidence of the defendant's Hispanic surname, the defendant presented no evidence on the record prior to or at the time of the motion for a mistrial to show that he was in fact a member of a cognizable racial group. As such, the defendant failed to prove the first element of his prima facie case, as set out in *Batson, supra*.

In his motion for new trial, Alvarado alleged, inter alia, that the trial court erred in overruling his motion for a mistrial because the prosecutor had used peremptory challenges to strike all minority members, in violation of *Batson, supra*.

In his argument on that motion, defense counsel stated that both the defendant and Diaz were Mexican-Americans. These statements were not contested by the State. Defense counsel also argued that Diaz had been struck by the State's use of a peremptory challenge. This fact is supported by the record. Defense counsel further contended that the lack of questioning of Diaz by the State was a circumstance which, combined with the other facts, raised an inference of purposeful discrimination. He also maintained that the unavailability of a jury questionnaire for Diaz was not a neutral explanation justifying the strike because she could have been asked the same questions during voir dire.

The prosecutor responded that he would stand on the explanations which he had provided on the motion for a mistrial. He also argued that his statements during voir dire failed to indicate that he was attempting to exclude jurors on the basis of "national origin." Another consideration he cited for striking Diaz from the jury was the fact that she was young, and he feared she might identify with some of the young defense witnesses whom he thought would appear at trial. He reiterated, however, the fact that his primary consideration for challenging Diaz was the fact of his lack of background information regarding her qualifications.

Defense counsel responded that white persons who were the same age as some of the witnesses were left on the jury. He again complained that the lack of a jury questionnaire for Diaz could not justify the strike in light of the State's failure to question her.

The trial court overruled the motion for new trial on the

ground that one strike was insufficient to invalidate the entire jury under the rules announced in *Batson v. Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

The sustaining or denial of a motion for new trial is, again, a matter left to the sound discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of that discretion. *State v. Donnelson,* 225 Neb. 41, 402 N.W.2d 302 (1987). Further, the trial court's determination regarding the existence of purposeful discrimination in the prosecutor's use of his peremptory challenges is a factual determination which this court will reverse only if clearly erroneous. *United States v. Mathews,* 803 F.2d 325 (7th Cir. 1986), *cert. granted in part* 480 U.S. 945, 107 S. Ct. 1601, 94 L. Ed. 2d 788 (1987); *Rodgers v. State,* 725 S. W.2d 477 (Tex. App. 1987).

We assume, without deciding, that defense counsel's uncontested statements regarding the defendant's and Diaz' race were sufficient to meet the defendant's burden of proof as to the first element of the *Batson* test. The question then becomes, Did those facts, combined with the other circumstances in the case, raise an inference of purposeful discrimination, and if so, did the prosecutor successfully rebut the inference by bringing forward a neutral explanation for the strike?

According to the Court in *Batson, supra*, the trial court is to consider all relevant circumstances in deciding whether the defendant has made the requisite showing of discriminatory purpose. A pattern of strikes against persons of the defendant's race or the prosecutor's questions and statements during voir dire were cited by that Court as examples of circumstances which might support or refute an inference of discriminatory purpose. *Batson, supra*.

In this case, there is no pattern of strikes from which such an inference can be raised, as there was only one strike which was relevant to a *Batson* determination. However, a pattern of strikes is not required to show a *Batson* violation. In *Batson, supra* at 476 U.S. at 97, the Court indicated that a pattern of strikes was merely an "illustrative" example of circumstances which might permit an inference of purposeful discrimination. In reaching its determination that a defendant could show

purposeful racial discrimination by evidence of the prosecutor's use of peremptory challenges in his own case, the *Batson* Court stated: " '[A] consistent pattern of official racial discrimination' is not 'a necessary predicate to a violation of the Equal Protection Clause. A single invidiously discriminatory governmental act' is not 'immunized by the absence of such discrimination in the making of other comparable decisions.' " *Batson, supra* at 476 U.S. at 95 (quoting *Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)).

A similar interpretation of the *Batson* requirements was adopted by the court in *Rodgers v. State*, which stated at 479:

> Although *Batson* requires a showing that members of appellant's race were removed from the jury, it does not speak to how many members of appellant's race must be struck. [Citation omitted.] There is no quantitative formula with which to gauge peremptory challenges. Such determinations should be based on all relevant circumstances in a particular case.

As such, the trial court in this case erred in basing its determination that there was no showing of purposeful discrimination on the fact that there was only one strike at issue. Nevertheless, we are convinced that no substantial miscarriage of justice resulted, as the trial court's overruling of the motion for new trial was justified on other grounds. See Neb. Rev. Stat. § 29-2308 (Reissue 1985).

Initially, an inference of discrimination was not raised by the prosecution's alleged lack of questioning of Diaz. While it is true that she was addressed by the prosecutor only once individually, she, like the other 23 members of the venire, was subject to the many questions addressed to the panel in general. At one point during voir dire, the prosecutor explained:

> I'm trying to just pick on a few people rather than going through and asking each of you individually these questions. I would trust that if you note something that stands out in your own minds, a problem you might have, I'm trusting you to raise your hand and let me know, if you would. And that will prevent me from having to go through and ask everybody.

Thus, the lack of individual questioning did not necessarily imply an intent to discriminate. In fact, the record reflects that seven other persons on the panel were addressed individually by the State only one time or not at all. The record does not reflect the race of any of these other prospective jurors.

Even if the evidence had been sufficient to raise an inference of purposeful discrimination, the State provided a neutral explanation for the strike of Diaz.

At the beginning of the voir dire, the trial court explained that the purpose of the jury questionnaires was to inform the court and counsel about each juror's background. The court also added: "We'll try to avoid asking those questions which are answered on that questionnaire." Similarly, at the beginning of his questioning on voir dire, the prosecutor stated: "I'll try to avoid asking questions that you've already answered on your sheets, that's exactly the purpose of it, there's no other reason to fill out information questionnaires other than to save some time at this juncture so that we don't have to ask background questions we'd ordinarily ask."

In a footnote to *Batson v. Kentucky,* 476 U.S. 79, 89 n.12, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the Court provided further explanation for techniques used by attorneys to learn information about members of the venire from which the jury is likely to be drawn:

> Prior to *voir dire* examination, which serves as the basis for exercise of challenges, lawyers wish to know as much as possible about prospective jurors, including their age, education, employment, and economic status, so that they can ensure selection of jurors who at least have an open mind about the case.

In *Rodgers v. State,* 725 S.W.2d 477 (Tex. App. 1987), the court held that the prosecutor had provided a legitimate neutral explanation for the peremptory challenge of a black venire member where the prosecutor explained the venire member was struck because she had failed to fully complete the jury form. The court concluded that this strike and several others were justifiable because the neutral explanations were similar to those articulated in other cases. *Rodgers, supra.* It was significant in the other cases that the prosecutor's explanations

related to the outcome of the case and were found to have been exercised in the State's interest of a fair and impartial jury. *Rodgers, supra*.

Without the benefit of Diaz' jury questionnaire, the State, in the case at bar, was limited in its information from which to judge her ability to act as a fair and impartial juror. The prosecutor can hardly be blamed for not asking Diaz those questions during voir dire, as the stated purpose of the questionnaires was to save time at that stage.

The defendant argues that two white members of the panel, who failed to provide juror questionnaires, were allowed to sit on the jury despite the fact that one had been addressed individually only once during voir dire and the other not at all. While the record shows that these two persons did sit on the jury, there is no evidence of their failure to submit jury questionnaires nor of their respective races.

We conclude that the trial court did not abuse its discretion in overruling the defendant's motion for new trial. The judgment is affirmed.

AFFIRMED.