STATE OF NEBRASKA, APPELLEE, V. TERRELL L. WALTON,
APPELLANT.
418 N.W.2d 589

Filed February 5, 1988.   No. 87-124.

Thomas M. Kenney, Douglas County Public Defender, and Timothy P. Burns, for appellant.

Robert M. Spire, Attorney General, and Mark D. Starr, for appellee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

GRANT, J.
Defendant, Terrell L. Walton, appeals his convictions in the district court for Douglas County of first degree assault, attempted robbery, and the use of a firearm during the commission of each felony. After conviction on each count, defendant was sentenced to consecutive terms of imprisonment. During selection of the jury, the prosecutor used three of his six peremptory challenges to strike the only three blacks on the jury panel. Defendant, who is black, appeals. He contends that under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), which, pursuant to the equal protection clause of U.S. Const. amend. XIV, forbids the prosecutor from challenging potential jurors solely on account of their race, his motion for mistrial should have been granted by the district court. We affirm.

At the trial, evidence was adduced showing the following.

On August 1, 1986, at approximately 4:45 a.m., Kelly McBride was walking to work in downtown Omaha. At this time, defendant had brought his automobile to a stop near a downtown intersection. In the passenger seat was another black male. As McBride crossed the intersection, defendant pulled in front of her, pointed a sawed-off shotgun at her, and demanded her purse. When she refused, he shot her, causing a severe wound to her abdomen.

Two men witnessed defendant's car drive away at a high rate of speed. When the police arrived moments later, these men provided them with a description of the car and a nearly exact license plate number. Within minutes, police officers identified the car, its owner, and its owner's address. Meanwhile, at approximately 5 a.m., a young man who lived across the street from the car owner's north Omaha address saw defendant and his companion back the automobile into the car owner's driveway. Defendant fled on foot, hid in some bushes behind the car owner's house, and was there apprehended by police. Police also found the sawed-off shotgun in the shrubbery 10 feet from where defendant was found.

At trial, defendant did not deny he was present at the shooting and attempted robbery, but testified that he had not done the actual shooting and that at that time he did not know the correct name of the person he was with, nor that that person was going to commit such acts.

Defendant's trial commenced on January 12, 1987. A jury panel of 24 prospective jurors was assembled. Of this panel, three were black. Pursuant to Neb. Rev. Stat. § 29-2005 (Reissue 1985), the attorney prosecuting on behalf of the State is entitled to a peremptory challenge of six jurors when the offense is punishable by imprisonment for a term exceeding 18 months and less than life. Following voir dire, the prosecutor used three of his six peremptory challenges to exclude the three black jurors.

Defendant's attorney then moved for a mistrial, outside the presence of the jury, stating, "Your Honor, at this time I'd make a motion for a mistrial based on the recent Supreme Court case dealing with the exclusion of black jurors without articulated reasons why certain black jurors were excluded."

The trial judge called upon the State to "articulate on the record what the reasons were for the exercise of the challenges with respect to [the three excluded black jurors]."

The prosecutor provided the following explanation:

> With respect, Your Honor, to . . . juror #16, the State felt because she was unemployed, because she was single, because she lived at 3725 Franklin, that she would not have the ties to the community that would show the stability that The State would be hoping to have in a juror of this kind; and she was struck for that reason together with juror #2, who happens to be a white male.
>
> With respect to juror #4, [the juror] in my opinion, I believe, is the mother or related to possibly a defendant . . . who, I believe, was prosecuted by our office. And while I did ask each and every juror if they had been associated with our office, she didn't indicate any knowledge or anything along those lines because possibly of embarrassment or at least in my own mind because of that, because she lived in the general area of North 41st Street. Those are the reasons I struck [the juror].
>
> And finally, [the juror], who was the third black, is married to a Douglas County Social Services individual. Because of that and his general locale on Belvedere Boulevard, I feel that it's in our best interests to leave him out. Those are the three reasons why those three individuals were in fact struck.

Defendant's sole assignment of error is that the trial court erred in overruling defendant's motion for a mistrial after the prosecutor struck all the black prospective jurors from the jury panel.

In April of 1986, the U.S. Supreme Court, in *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), held that a state criminal defendant could establish a prima facie case of racial discrimination violative of the 14th amendment based on the prosecution's use of peremptory challenges to strike members of the defendant's race from the jury panel. Once the defendant made a prima facie showing of racial discrimination, the burden shifted to the prosecution to come forward with a neutral explanation for those challenges.

Although the trial court judge did not state on the record that defendant had met his burden of proving a prima facie case, he did so impliedly when he asked the State to articulate its reasons for striking the three black venirepersons. *Batson, supra*, held that "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." 476 U.S. at 96.

> "To establish such a case, the defendant first must show that he is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Id*. at 1722-23. Then, "the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used [peremptory challenges] to exclude the veniremen from the petit jury on account of their race." *Id*. at 1723. These "relevant circumstances" may include a pattern of peremptorily striking black jurors, the prosecution's questions and statements during *voir dire*, and the prosecution's statements and actions in exercising his peremptory strikes.

*United States v. Mathews*, 803 F.2d 325, 329 (7th Cir. 1986), citing *Batson v. Kentucky, supra*. The trial court apparently determined that sufficient evidence existed to establish a prima facie case of racial discrimination, thus shifting the burden to the State to set forth neutral explanations. The State does not contest that determination. Our inquiry, then, is limited to scrutinizing the trial court's holding with regard to the State's neutral explanations.

In *Batson*, 476 U.S. at 97, the Supreme Court stated:

> Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. See *McCray v. Abrams*, 750 F.2d, at 1132; *Booker v. Jabe*, 775

F.2d 762, 773 (CA6 1985), cert. pending 85-1028. But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race.

This court's scope of review is similar to that enunciated by the seventh circuit.

For purposes of review on appeal, *Batson* reminds us that " 'a finding of intentional discrimination is a finding of fact' entitled to appropriate deference by a reviewing court," and that, "[s]ince the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *Id*. at 1724 n. 21. Thus, we may only reverse the trial judge's determination that the prosecution's peremptory challenges were not motivated by intentional discrimination if that determination is clearly erroneous.

*United States v. Mathews, supra* at 330, citing *Batson v. Kentucky, supra*.

In *State v. Alvarado*, 226 Neb. 195, 200, 410 N.W.2d 118, 121-22 (1987), we held that "the trial court's determination regarding the existence of purposeful discrimination in the prosecutor's use of his peremptory challenges is a factual determination which this court will reverse only if clearly erroneous." The same rule is to be applied in reviewing the trial court's determination as to the adequacy of the State's "neutral explanation" of its challenges. Therefore, the trial court's determination that the State's peremptory challenges were not motivated by intentional discrimination should not be reversed on review by this court unless that determination is clearly erroneous.

In a similar case, the U.S. Court of Appeals for the Eighth Circuit held that "the trial court's determination that the government has rebutted the defendant's *prima facie* case should be given great deference . . . ." *U.S. v. Love*, 815 F.2d 53, 55 (8th Cir. 1987). See, also, *U.S. v. Cloyd*, 819 F.2d 836 (8th Cir. 1987).

Once the burden was shifted to the State, the prosecutor was required to articulate a "neutral explanation" for striking the three black venirepersons. The explanations set forth above were provided.

The neutral explanation given by the prosecutor for striking juror No. 16 was that she was unemployed, single, and lived at 3725 Franklin and that she did not have the ties to the community that would show the stability the State sought. The trial court held that the explanation was sufficient. We agree. The court took notice of the fact that juror No. 2, who was unemployed and white, was also struck by the State. In addition, the court noted that unemployment is one of the discretionary considerations that a prosecutor can use in exercising his or her peremptory challenges.

The prosecutor explained that juror No. 4 was struck because the prosecutor felt that she was possibly related to an individual who was prosecuted by the prosecutor's office. After inquiry by the court, the prosecutor satisfied the court's question by identifying the prosecution he referred to. The trial court held that explanation was adequate.

The court held that the prosecutor's explanation was adequate to explain his challenge of the third black prospective juror. The prosecutor explained that the potential juror was married to a "Douglas County Social Services individual." The trial judge accepted this explanation, noting that he felt there is a tendency on the part of people engaged in social services to blame others than the individual involved after a wrongful act is done. A peremptory strike based on a trial attorney's explanation that he would prefer not to have jurors who work in the social services area, or their spouses, is not a racially discriminatory use of a peremptory challenge. The effect of the prosecutor's "neutral explanation" was that his peremptory challenge was based not on the prospective juror's race, but on the nature of the employment of the juror's wife. A white juror could be challenged on the same reasoning. In so stating, we note that the trial court need not determine if the explanation is reasonable, but only that it is nondiscriminatory and is constitutionally permissible.

The U.S. Supreme Court recognized in *Batson v. Kentucky*,

476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), that often peremptory challenges are based on the intuitive judgment of the prosecutor. However, the Court held that once a defendant establishes a prima facie case of racial discrimination, the prosecutor may not rebut the defendant's case by merely denying that he had a discriminatory motive or by merely affirming his good faith in individual selection. *Batson v. Kentucky, supra.* See, also, *State v. Alvarado*, 226 Neb. 195, 410 N.W.2d 118 (1987).

*Batson* also stated that the neutral explanation need not rise to the level of that required to justify a challenge for cause. A constitutionally permissible neutral explanation therefore lies somewhere on a spectrum bounded by the explanation required for a "cause" strike, on one end, and a mere denial that the prosecutor had a discriminatory motive, on the other end. We cannot say that the trial court, in the exercise of its factfinding function, did not have sufficient evidence before it to support its determination. The trial court could well find that the prosecutor's explanations fell within the boundaries set out above. While the explanations provided in the instant case would not be sufficient to justify a "for cause" challenge, they were not so lacking in any basis so as to constitute a mere denial of discriminatory motive.

We conclude that the trial court did not err in accepting the State's neutral explanations and in denying defendant's motion for mistrial.

AFFIRMED.