STATE OF NEBRASKA, APPELLEE, V. J.C. FRELO, APPELLANT.
421 N.W.2d 447

Filed April 1, 1988.   No. 87-422.

Thomas M. Kenney, Douglas County Public Defender, and Timothy P. Burns, for appellant.

Robert M. Spire, Attorney General, and Elaine A. Catlin, for appellee.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and HANNON, D.J.

HANNON, D.J.

The defendant was convicted of possession of cocaine with intent to deliver, and he was sentenced to imprisonment for not less than 3 nor more than 5 years. He assigns two errors: one, that the trial court erred in overruling the defendant's motion for a mistrial on the basis that the prosecuting attorney struck 4 of 5 black persons on the panel of 24 venire members that had been passed for cause. The defendant also claims the sentence was excessive.

No record was made of the jury selection process. Immediately after the jury was impaneled and sworn, the defendant's counsel moved for a mistrial, based on the selection of the jury. He stated that of the 24 persons passed for cause, the prosecutor used peremptory challenges to strike 4 of 5 black venirepersons. The court then allowed the defense counsel to state that the defendant is black and jury panel members Nos. 11, 14, 21, 22, and 9 are black and that only one of those stricken was asked questions. The trial judge then asked the prosecutor, "Do you wish to speak to it . . . ?" The prosecutor then stated he was not sure what the case required and asked if he should go down the list. The judge said, "Perhaps it might be wise."

The prosecutor stated in turn the number of each black member of the panel and his reason for striking or keeping the particular member. He stated one panelist was stricken because she was unemployed, and the prosecutor believed he had defended her many times during the years 1973 through 1981 for misdemeanor violations. Another person was stricken because she lived close to some persons who were believed to be in the same drug distribution chain as the defendant. Another prospective juror lived next door to a family that was a victim of a serious crime handled by the prosecutor, and some members of that family were very unhappy with the outcome of that case. The prosecutor was afraid the panelist might agree with the side of the family that was unhappy with the result of that prosecution and be influenced by it. The last juror stricken had had some difficulty when he sat as an alternate juror on another jury. The judge interjected that he was waiting for the defense to strike that juror, and defense counsel agreed there was a

problem with that juror. The prosecutor stated that he left the other black person on the jury because during examination she seemed to agree with his explanation of legal concepts. The prosecutor also said that of the three alternates called, one was a black person, who was left on because, upon examination, he seemed like a good juror. The judge then stated that each juror in the box was personally asked if this was his or her first time as a juror. The judge then stated that, based on the reasons given, the motion was overruled. The defense counsel then stated that the prosecutor had always been fair with him.

The defendant relies upon the case of *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Since the *Batson* decision, this court has considered its effect in four cases, to wit: *State v. Peery*, 223 Neb. 556, 391 N.W.2d 566 (1986); *State v. Threet*, 225 Neb. 682, 407 N.W.2d 766 (1987); *State v. Alvarado*, 226 Neb. 195, 410 N.W.2d 118 (1987); and *State v. Walton*, 227 Neb. 559, 418 N.W.2d 589 (1988). In *Walton, supra*, as in this case, the trial judge did not make a specific finding that the defendant had established a prima facie case of purposeful discrimination, but it was held that he impliedly did so when he asked the prosecutor to articulate the reasons for striking the black members of the panel. Without engaging in an extended discussion of whether the defendant made a prima facie showing of purposeful discrimination in accordance with *Batson, supra*, we will assume for the sake of argument that a prima facie case was properly established. However, we believe that the prosecution articulated an adequate, neutral explanation for the exclusion of each juror in question.

In *State v. Alvarado, supra* at 200, 410 N.W.2d at 121-22, this court held, "[T]he trial court's determination regarding the existence of purposeful discrimination in the prosecutor's use of his peremptory challenges is a factual determination which this court will reverse only if clearly erroneous." In *State v. Walton, supra* at 563, 418 N.W.2d at 592, it was held, "The same rule is to be applied in reviewing the trial court's determination as to the adequacy of the State's 'neutral explanation' of its challenges. . . . [T]he trial court's determination . . . should not be reversed on review by this court unless that determination is

clearly erroneous." In this case one black juror and one black alternate were not stricken, and both the judge and the defense counsel seemed to agree that one of those stricken would not be a good juror for any party. As to the unemployed panelist who was stricken, a feeling that unemployment might give rise to a prejudice was approved in *State v. Walton, supra*. The other reasons given amount to a claim by the prosecutor that he has a reasonable basis to believe that the particular jurors might harbor a predisposition toward the defendant, or against the State or the prosecutor. Many facts would necessarily go into determining whether the reasons given are adequate. On the basis of the record in this case, the holding by the trial court that the explanations were adequate would not be clearly wrong.

In denying the motion for mistrial, the trial judge stated, "[B]ased on the reasons given [by the prosecutor]" the motion was overruled. Such record as is presented to this court would justify such a ruling on the basis that the State gave adequate "neutral explanation" for its challenges.

The defendant also assigns as error the allegedly excessive sentence. In support of the argument the defendant maintains his involvement in the crime was not great and that the presentence report indicates the defendant had no prior criminal history. This court has said, " '[T]he punishment for a criminal act should in all circumstances be commensurate with the offense.' " *State v. Bocian*, 226 Neb. 613, 618, 413 N.W.2d 893, 896 (1987). It is necessary to review the evidence.

At the trial the defendant testified that he was hired in California to drive a recent acquaintance he knew as "Blood" to Omaha to visit a child. He was to be paid $500 upon returning. Blood was the same man the Omaha police knew as Edward Wyrick. The defendant testified that they drove from Los Angeles to Omaha without rest. He claims to have slept and to have had no idea that Wyrick might have cocaine with him until he saw some drug preparation materials in the hotel room. He testified that he had no knowledge of the drug activities of Wyrick.

In mid-August of 1986, the Omaha police started to investigate the possible drug activities of one Edward Wyrick. On September 6, 1986, a police officer received information

that Wyrick, accompanied by another black man, was back in Omaha and staying at the Residence Inn. The police officer made arrangements for surveillance to begin the next day. On September 6, he also drove to the hotel and happened to see Wyrick and the defendant get into a Corvette automobile and drive away. The next morning, at 9, two police officers began surveillance from a room at the inn. They were in a room from which they could see the room where the defendant and Wyrick were staying, as well as the parking area associated with the room. At about 12:50 p.m., the defendant left the room and walked to the Corvette parked in the lot. He opened the door and appeared to bend down in the front seat and then in an area behind the seat. In approximately 30 seconds he returned to the hotel. At about 1:25 in the afternoon the defendant and Wyrick left their room together. The defendant was carrying a large brown grocery sack, which he placed in the trunk of a 1979 Chevrolet Malibu which was sitting near the Corvette. After checking to see if the trunk was locked, the defendant got into the passenger seat of the Corvette and drove off with Wyrick. Within two blocks, other police officers who were part of the surveillance stopped the Corvette.

After the vehicle was stopped, the police saw what they suspected to be cocaine on the floorboard on the driver's side of the Corvette, as well as packets of what appeared to be cocaine packaged for street sale protruding from a purse which was under the driver's seat. The defendant and Wyrick were placed under arrest. When the vehicle was searched, six packages of cocaine were found in the Corvette.

Later, the hotel suite was searched. It consisted of two rooms, one above the other, joined by a stairway. The downstairs room was equipped with a foldaway bed, and the room above was a bedroom. In the lower room, the police found what appeared to be a residue of cocaine on a table, and a playing card and small pieces of plastic were on the table. In the bedroom, they found a baggie containing cocaine in a jogging jacket, an electric gram scale, and Seal-A-Meal packages.

When the Malibu was searched, the sack which the defendant had placed in the trunk contained several packets of cocaine. Some of it was crack cocaine, some rock cocaine, and

one packet was cocaine in powdered form. The sack also contained a loaded .38-caliber handgun, a package of Mannitol, a glass vial containing a clear liquid, and a Dazey Micro-Seal machine. The last three items were identified as items regularly used by those in the drug trade to cut and package cocaine. In all, the police found 40 grams of cocaine, with an approximate street value of $7,000.

Obviously, the jury did not believe the defendant. The presentence report does not show the defendant to have been convicted of serious criminal activity, but it shows a long history of contact with police, and would be more than sufficient to demonstrate that the defendant was no novice. The evidence would establish that Wyrick was the leader, but it also established the defendant to be a knowing helper in an interstate drug distribution trade.

"Ordinarily, a sentence imposed within statutory limits will not be overturned on appeal, absent an abuse of discretion . . . ." *State v. Hodge and Carpenter*, 225 Neb. 94, 104, 402 N.W.2d 867, 874 (1987). That case and the following cases involving controlled substances show that the sentence imposed in this case is clearly within the area of the trial court's discretion, to wit: *State v. Knoefler*, 227 Neb. 410, 418 N.W.2d 217 (1988); *State v. Whitehurst*, 224 Neb. 174, 396 N.W.2d 288 (1986); *State v. Kenny*, 224 Neb. 638, 399 N.W.2d 821 (1987); *State v. Cain*, 223 Neb. 796, 393 N.W.2d 727 (1986).

The judgment and sentence of the trial court are affirmed.

AFFIRMED.