BARBERA, C.J.
We apply in this case Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny to the State’s exercise of peremptory challenges and its subsequent explanations for making those challenges. We hold that, because the State’s explanation for one of its peremptory challenges was not neutral as to both race and gender, Petitioners are entitled to relief under Batson. We accordingly reverse the decision of the Court of Special Appeals and grant Petitioners a new trial.
I.
Petitioners, Mashea Ray-Simmons and Antionette McGouldrick, were tried jointly with a third co-defendant before a jury in the Circuit Court for Baltimore City on charges of first degree murder, conspiracy to commit murder, and related handgun offenses. Trial proceeded over the course of eight days in April 2012. Petitioners were acquitted of first degree murder but were found guilty and sentenced for second degree murder, conspiracy to commit murder, and use of a handgun in the commission of a crime of violence. The Court of Special Appeals affirmed Petitioners’ convictions in an unreported opinion. We granted Petitioners’ petition for writ of certiorari to answer the following question:
Does a prosecutor’s response to an allegation of racial and gender discrimination in the exercise of a peremptory challenge that she intended to replace the stricken African American male juror with another African American male satisfy the requirement of Batson v. Kentucky, that the State a) provide a specific explanation for each challenged *435 strike, which b) is racially, and with respect to gender, neutral?
II.
Batson and its progeny instruct that the exercise of peremptory challenges on the basis of race, gender, or ethnicity violates the Equal Protection Clause of the Fourteenth Amendment.[1] Excusing a juror on any of those bases violates both the defendant’s right to a fair trial and the potential juror’s “right not to be excluded on an impermissible discriminatory basis.” Edmonds v. State, 372 Md. 314, 329, 812 A.2d 1034 (2002). Moreover, when the striking party’s “choice of jurors is tainted with racial bias, that overt wrong casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial, invit[ing] cynicism respecting the jury’s neutrality and undermining] public confidence in adjudication.” Miller-El v. Dretke, 545 U.S. 231, 238, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) (citations, internal quotation marks, and ellipses omitted).
The Supreme Court announced in Batson a three-step process to assist the trial court in deciding a claim that a party to the case exercised a peremptory challenge to eliminate a prospective juror based on his or her race, gender, or ethnicity. The Supreme Court has hewed to that process ever since Batson and has clarified how trial courts are to employ the process and appellate courts are to review trial courts’ decisions. The Supreme Court has emphasized that, throughout the process of evaluating such claims, “[t]he trial court has a pivotal role.” Snyder v. Louisiana, 552 U.S. 472, 477, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008).
*436 At step one, the party raising the Batson challenge must make a prima facie showing — produce some evidence— that the opposing party’s peremptory challenge to a prospective juror was exercised on one or more of the constitutionally prohibited bases. See Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam). “[T]he prima facie showing threshold is not an extremely high one — not an onerous burden to establish.” Stanley v. State, 313 Md. 50, 71, 542 A.2d 1267 (1988). A prima facie case is established if the opponent of the peremptory strike(s) can show “that the totality of the relevant facts gives rise to an inference of discriminatory purpose.” Johnson v. California, 545 U.S. 162, 168, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005) (internal quotation marks omitted). Merely “a ‘pattern’ of strikes against black jurors in the particular venire ... might give rise to or support or refute the requisite showing.” Stanley, 313 Md. at 60-61, 542 A.2d 1267 (citing Batson, 476 U.S. at 97, 106 S.Ct. 1712).
If the objecting party satisfies that preliminary burden, the court proceeds to step two, at which “the burden of production shifts to the proponent of the strike to come forward with” an explanation for the strike that is neutral as to race, gender, and ethnicity. Purkett, 514 U.S. at 767, 115 S.Ct. 1769. A step-two explanation must be neutral, “but it does not have to be persuasive or plausible. Any reason offered will be deemed race-neutral unless a discriminatory intent is inherent in the explanation.” Edmonds, 372 Md. at 330, 812 A.2d 1034 (citation omitted). “At this step of the inquiry, the issue is the facial validity of the prosecutor’s explanation.” Hernandez v. New York, 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion). The proponent of the strike cannot succeed at step two “by merely denying that he had a discriminatory motive or by merely affirming his good faith.” Purkett, 514 U.S. at 769, 115 S.Ct. 1769. Rather, “[ajlthough there may be any number of bases on which a prosecutor reasonably might believe that it is desirable to strike a juror who is not excusable for cause,” the striking party “must give a clear and reasonably specific *437 explanation of his legitimate reasons for exercising the challenge.” Miller-El, 545 U.S. at 239, 125 S.Ct. 2317 (alterations omitted); Stanley, 313 Md. at 61, 542 A.2d 1267 (quoting Batson, 476 U.S. at 98 n. 20, 106 S.Ct. 1712).
If a neutral explanation is tendered by the proponent of the strike, the trial court proceeds to step three, at which the court must decide “whether the opponent of the strike has proved purposeful racial discrimination.” Purkett, 514 U.S. at 767, 115 S.Ct. 1769. “It is not until the third step that the persuasiveness of the justification becomes relevant— the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination.” Johnson, 545 U.S. at 171, 125 S.Ct. 2410 (quoting Purkett, 514 U.S. at 768, 115 S.Ct. 1769) (emphasis omitted); see also Edmonds, 372 Md. at 330, 812 A.2d 1034. At this step, “the trial court must evaluate not only whether the [striking party’s] demeanor belies a discriminatory intent, but also whether the juror’s demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the [striking party].” Snyder, 552 U.S. at 477, 128 S.Ct. 1203. Because a Batson challenge is largely a factual question, a trial court’s decision in this regard is afforded great deference and will only be reversed if it is clearly erroneous. Edmonds, 372 Md. at 331, 812 A.2d 1034.
Relevant to this case, the question of whether the challenger has made a prima facie case under step one becomes moot if the striking party offers an explanation for the challenged strike. See id. at 332, 812 A.2d 1034 (citing Hernandez, 500 U.S. at 359, 111 S.Ct. 1859) (holding that “whether petitioner has made a prima facie showing that the State’s challenges were racially motivated ... is moot because the State offered explanations for its peremptory challenges and the court ruled, in part, on the ultimate question of intentional discrimination”); Davis v. Balt. Gas & Elec. Co., 160 F.3d 1023, 1027 (4th Cir.1998) (holding that “whether the party disputing the peremptory strikes has established a prima facie case of discrimination is moot, since Defendant *438 voluntarily offered racially neutral reasons for its strikes”). “The effect of a prima facie case of racial or gender discrimination is to shift the burden of production to the party exercising the strike to offer a race or gender-neutral explanation. Once a [race- and gender-neutral] explanation is offered, the prima facie case dissipates[.]” Gilchrist v. State, 340 Md. 606, 634, 667 A.2d 876 (1995) (Chasanow, J., concurring).
It is against this backdrop that we determine whether the trial court correctly applied the Batson process. Before doing so, however, we must resolve a preliminary matter that requires our examination of what occurred before and during the process of selecting the jury.
III.
On March 28, 2012, on what, save for a postponement, evidently was to have been the first day of jury selection, Ms. McGouldrick’s counsel requested a “ruling that an objection made by one defendant would be deemed made by the others.” The trial court responded, “That’s fine. All objections are preserved.” During jury selection on April 9, 2012, the State initially exercised peremptory challenges to excuse Juror 4579 and Juror 4692, both of whom are African American men. When twelve jurors were seated, the trial court' asked the State if the panel was acceptable. At that point, the State asked to excuse Juror 4583, another African American man who had not answered any questions during voir dire. As counsel continued their attempt to seat a twelfth juror, the State exercised two additional peremptory challenges of African American men, Juror 4773 and Juror 4909.
Upon the State’s exercise of its fifth peremptory challenge to excuse Juror 4909, counsel for Petitioner Ray-Simmons asked to approach the bench. The following colloquy occurred between the trial court, Ms. Ray-Simmons’s counsel, and the State, with counsel for the remaining defendants also present at the bench:
[DEFENSE COUNSEL]: On behalf of Defendant Ray-Simmons, Your Honor, the State has stricken — made five *439 peremptory strikes; all five of them black, all five of them male. All five of them are no[t] educated and -with all [due] respect, there seems to be very little other cause for striking. I think that it’s inappropriate.
THE COURT: All right. [State]?
[THE STATE]: Your Honor, as to 4909, the State struck him because of his age. As to 4773, that man appeared to have a real issue with numbers. He either wasn’t here this morning when his number was called or just doesn’t — he just appeared to have some issues with that. As to 4583, I intended to replace him with another black male. Defense, I believe it was two[2] actually, ended up striking that person.
As to 4692 — ... His brother was convicted of CDS and he was unemployed. As to 4579 he’s also young.
THE COURT: Okay. All right.
[THE STATE]: I intend to strike more that would also be young.
THE COURT: That’s fine. Noted. I don’t think it would be used to establish a prima facie case. Thank you.
[DEFENSE COUNSEL]: Okay.
(Emphasis added). Jury selection resumed. When again twelve jurors were seated, the trial court asked counsel for Ms. Ray-Simmons if the panel was acceptable to his client, to which he replied “Acceptable.” Then, in response to the same question, counsel for Ms. McGouldrick answered, “Acceptable, safe from [sic][3] prior objections, Your Honor.” Two alternates were chosen without further controversy and the trial proceeded.
*440 IV.
In its unreported opinion in this case, a panel of the Court of Special Appeals held as a preliminary matter, without mention of the trial court’s March 28, 2012, ruling, that neither Petitioner had preserved the Batson claim for appellate review because both had accepted the composition of the jury at the close of jury selection. The panel nonetheless addressed the Batson claim and held, in the alternative, that the trial court had not erred in ruling that the claim failed for want of a prima facie case of discrimination and that the prosecutor’s explanation was race- and (presumably) gender-neutral. Petitioners asked this Court to accept certiorari to review not only the Court of Special Appeals’s holding on the merits of their Batson claim, but also the intermediate appellate court’s preliminary determination that Petitioners had not preserved the claim for appellate review. The State, not surprisingly, agreed with the Court of Special Appeals on both grounds. The State later noted in its brief before this Court that our decision on the merits of the Batson claim would be advisory because it would leave standing the Court of Special Appeals’s threshold holding on non-preservation grounds. Notwithstanding that we denied certiorari on the question of preservation, we deem it appropriate to address it to lay to rest any concern that this be merely an advisory opinion. Upon our review of the record, it is clear to us that the Batson claim was properly preserved by both Petitioners.
Based upon the trial court’s ruling at the outset of trial proceedings that “an objection made by one defendant would be deemed made by the others,” the Batson challenge raised expressly by counsel for Ms. Ray-Simmons was joined automatically by counsel for Ms. McGouldrick. Likewise, when at the end of jury selection counsel for Ms. McGouldrick stated that the jury was acceptable “safe from [sic] prior objections,” counsel for Ms. McGouldrick preserved the Batson challenge for his client as well as Ms. Ray-Simmons. It is of no consequence, therefore, that counsel for Ms. Ray-Simmons *441 accepted the composition of the jury without repeating his prior objection.[4]
In a prior criminal case involving codefendants, we noted without contradiction one commentator’s observation that, in cases involving codefendants, “[ujnless the identity and/or status of the objecting party is a factor in the trial judge’s decision to overrule the objection, any counsel’s objection *442 really should be allowed to preserve the issue, at least for all similarly situated parties.” Bundy v. State, 334 Md. 131, 146, 638 A.2d 84 (1994) (quoting Joseph F. Murphy, Jr., Maryland Evidence Handbook § 102(C), at 13 (2d ed. 1993)). The State’s exercise of peremptory challenges affected Ms. Ray-Simmons no more prominently than Ms. McGouldrick. Indeed, a claim that the State is exercising its peremptory challenges on the basis of race and gender implicates not only the parties to the case, but also the jurors who were stricken on a discriminatory basis and the public’s perception generally of our system of justice. These are the very concerns underpinning the Batson decision that bring us here today. See Miller-El, 545 U.S. at 238, 125 S.Ct. 2317. Taking together Ms. Ray-Simmons’s objection and Ms. McGouldrick’s preservation of that objection, given the trial court’s earlier ruling, we hold that both Petitioners preserved for appellate review their challenge to the State’s peremptory challenges. We therefore reverse the Court of Special Appeals’s holding to the contrary.
V.
We turn now to Petitioners’ challenge to the trial court’s Batson ruling. Their argument has several prongs. They argue that the court, by calling upon the State to explain its peremptory strikes, rendered moot the question of whether Petitioners had carried their preliminary burden of making out a prima facie case; even so, Petitioners had satisfied their burden of producing evidence of discrimination in the State’s exercising all five strikes — the only strikes the State had made by that point of jury selection — to remove African American men from the jury. Petitioners further argue that the prosecutor’s explanation for striking Juror 4583 violated the dictates of Batson because the explanation lacked the requisite specificity and on its face was based on the juror’s race and gender. We agree with Petitioners on all scores.
(a)
The preliminary “step one” determination of whether the objecting party has made out a prima facie case *443 of a Batson violation becomes moot when the striking party tenders an explanation for the challenged peremptory strike(s). Hernandez, 500 U.S. at 359, 111 S.Ct. 1859; Davis, 160 F.3d at 1027; Edmonds, 372 Md. at 332, 812 A.2d 1034. When in this case Petitioners asserted a Batson violation, the court turned its attention to the prosecutor, who immediately provided an explanation for each of the five peremptory strikes. If, in calling upon the State to respond, the trial court was looking to the State merely to address Petitioners’ showing of a prima facie case, the court erred as a matter of law. “What reasons a prosecutor may advance for his challenges are not relevant to a prima facie showing vel non. It is the ‘circumstances’ concerning the prosecutor’s use of peremptory challenges which may create a prima facie case of discrimination against black jurors, not the reasons given for the challenges.” Tolbert v. State, 315 Md. 13, 18, 553 A.2d 228 (1989).
The prosecutor explained that she excused Juror 4909 and Juror 4579 because of their youth; Juror 4773 had an issue with numbers; and Juror 4692 was unemployed and his brother had been convicted of a crime. With regard to Juror 4583, the prosecutor explained only: “I intended to replace him with another black male.” Notwithstanding that the court evidently believed the Batson inquiry remained at step one, even after the prosecutor’s proffered explanations for her strikes, those explanations automatically moved the Batson inquiry from the first to the second step. Edmonds, 372 Md. at 332, 812 A.2d 1034.
Furthermore, the record demonstrates that Petitioners satisfied their preliminary burden of producing a prima facie case of race — and gender-based strikes by the State. When Petitioners lodged their Batson challenge, the State had exercised five peremptory challenges, all of which were to remove African American men. This evidence sufficed to establish a prima facie case of race and gender discrimination. See Johnson, 545 U.S. at 173, 125 S.Ct. 2410; Batson, 476 U.S. at 97, 106 S.Ct. 1712 (noting that a mere “ ‘pattern’ of strikes *444 against black jurors included in the particular venire might give rise to an inference of discrimination,” thereby satisfying step one); Stanley, 313 Md. at 72, 542 A.2d 1267 (concluding that a prima facie case of racial discrimination was established where “the State used 80 percent of its peremptory challenges (eight of 10 strikes) to strike blacks from the jury panel”). The trial court erred in ruling that Petitioners had not made out a prima facie case of a Batson violation.
(b)
The State, by proffering an explanation for each of its strikes, moved the Batson inquiry to step two. At that step, the State, as the party exercising the challenged peremptory strike, carries the burden of coming forward with “a clear and reasonably specific explanation of its legitimate reasons for exercising the challenge.” Miller-El, 545 U.S. at 239, 125 S.Ct. 2317 (alteration omitted) (quoting Batson, 476 U.S. at 98 n. 20, 106 S.Ct. 1712); see also Chew v. State, 317 Md. 233, 245, 562 A.2d 1270 (1989) (noting that the striking party must provide an explanation for every strike). The State in this case failed to do so.
Petitioners have no quarrel with the State’s explanation of its reasons for striking Jurors 4579, 4692, 4773, and 4909; their concern focuses squarely on the State’s explanation for challenging Juror 4583. They argue that the prosecutor’s proffered explanation that she intended to replace Juror 4583 with another juror of the same race and gender — “I intended to replace him with another black male” — fails to satisfy the requirement of Batson that the explanation be “clear and reasonably specific”; moreover, the explanation on its face is race- and gender-based. We agree. A desire to replace a juror with another unspecified member of the panel does not explain in any way, race-neutral or otherwise, the prosecutor’s reasons for striking that particular juror. See State v. Hicks, 330 S.C. 207, 499 S.E.2d 209, 212 (1998) (concluding that the defendant failed to comply with Batson by explaining that he wanted “to reach some jurors further down the list” because he did not explain “which jurors he was *445 attempting to seat or why other jurors were more desirable” and therefore “[t]he effect was the same as if no reason was given”) (internal quotation marks omitted).
The State acquiesces on this point, acknowledging that the prosecutor’s response vis-á-vis Juror 4583 hardly amounts to an explanation of the reason for striking that prospective juror. Yet, in the State’s view, the prosecutor’s statement was merely an attempt to dispute Petitioners’ prima facie case and did not move the conversation to a step two Batson inquiry. We explained in part (a) why that argument fails. Rather, the fact that the State’s explanation for striking Juror 4583 was non-responsive establishes that the peremptory strike did not comply with Batson. See Bui v. Haley, 321 F.3d 1304, 1311—12 (11th Cir.2003) (concluding that “the State’s total failure to present any reason for the striking of the eleventh juror prevented it from rebutting the defendant’s prima facie case of race discrimination”).
Not only was the prosecutor’s explanation insufficiently clear and specific, it was also not race- and gender-neutral. We agree with Petitioners that the prosecutor’s apparent intention to replace Juror 4583 with another African American man discloses that race and gender factored improperly into the prosecutor’s decision, in violation of Batson. In Tyler v. State, 330 Md. 261, 267-68, 623 A.2d 648 (1993), the prosecutor explained that his reason for striking African American female jurors was not because of their race, but rather because they were women and the prosecutor desired to have more men on the jury. We held, prior to the Supreme Court’s decision in J.E.B. v. Alabama ex rel T.B., 511 U.S. 127, 130-31, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), that exercising a peremptory challenge on the basis of gender violates Article 24 of the Maryland Declaration of Rights. Tyler, 330 Md. at 270, 623 A.2d 648. Had Tyler been decided today, we have no doubt that an explanation like the one provided by the prosecutor in that case also would run afoul of the Batson line of cases. See also Elliott v. State, 185 Md.App. 692, 719, 972 A.2d 354 (2009) (holding that the State’s exercise of peremptory challenges against men did not comply with Batson — even though the *446 State’s intention was to reach a more balanced jury — because the State based its decision on gender).
Decisions of our sister jurisdictions are in accord with our conclusion. State v. Coleman, 970 So.2d 511 (La.2007), is one such case. The prosecutor in Coleman had proffered in response to the defendant’s Batson challenge that one African American juror “has filed a lawsuit against the city alleging institutional discrimination. Defense counsel voir dired on the race issue. There is a black defendant in this case. There are white victims.” Id. at 513-14 (footnote omitted). The Supreme Court of Louisiana concluded that this explanation was not race-neutral under Batson because the prosecutor “specifically referenced] the race of the defendant and the victim.” Id. at 516. As a result, “the explicit interjection of race, without further explanation, renders implausible any explanation other than that the decision to strike this prospective juror was not race-neutral.” Id.; see also People v. Mallory, 121 A.D.3d 1566, 993 N.Y.S.2d 609, 612 (2014) (rejecting the prosecutor’s explanation that the stricken juror “believes that police sometimes single out minorities and I have Caucasian police officers that are going to be taking the stand” because “the prosecutor explicitly referenced race in explaining his reasons”) (internal quotation marks omitted); Guzman v. State, 85 S.W.3d 242, 247 (Tex.Crim.App.2002) (en banc) (emphasizing that “the fact that a litigant mentions race in his explanation for peremptory challenge is indicative ... of purposeful discrimination”).
We hold that the prosecutor’s explanation for striking Juror 4583, in addition to lacking the requisite specificity, violated Batson because on its face the explanation was neither race-nor gender-neutral.
VI.
It remains for us to decide the remedy to which Petitioners are entitled. Under some circumstances, we have ordered a limited remand after a Batson violation instead of a *447 new trial to allow the trial court to complete the three-step inquiry. We noted in Edmonds that,
unless it is impossible to reconstruct the circumstances surrounding the peremptory challenges, due perhaps to the passage of time or the unavailability of the trial judge, the proper remedy where the trial court does not satisfy Bat-son’s requirements is a new Batson hearing in which the trial court must satisfy the three-step process mandated by that case and its progeny.
372 Md. at 339-40, 812 A.2d 1034. A limited remand may be appropriate, for example, where the State was not given an opportunity at trial to explain its reasons for exercising the contested peremptory challenges. See Mejia v. State, 328 Md. 522, 540, 616 A.2d 356 (1992) (ordering a limited remand because less than two years had passed since the trial began and “the State was not given the opportunity to explain its striking of [the challenged juror]”); Stanley, 313 Md. at 75-76, 542 A.2d 1267 (ordering a limited remand “to permit the State to provide, if it can, racially neutral reasons for its use of peremptories”). We also have recognized, however, that “certain difficulties are inherent in attempting to reconstruct events that occurred a year or more earlier.” Chew, 317 Md. at 239, 562 A.2d 1270.
We are persuaded that it would be impossible to reconstruct a jury that tried and convicted Petitioners almost four years ago. See id. (noting that a new trial is the appropriate remedy for a Batson violation when “the passage of time precludes fair consideration of the relevant issues”). Nor is there any legitimate reason for doing so given that the prosecutor explained her reasons for exercising her peremptory challenges. See Tyler, 330 Md. at 271, 623 A.2d 648 (“In the face of what the prosecutor said at trial, he is not entitled to come forward at this time in an attempt to present a neutral explanation for challenging women jurors. [Petitioners] are entitled to a new trial without further ado.”). We therefore conclude that Petitioners are entitled to a new trial.
*448 JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENTS OF CONVICTION AND REMAND THE CASES TO THE CIRCUIT COURT FOR A NEW TRIAL FOR EACH PETITIONER; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE CITY.
McDONALD, J., dissents.

. See Batson v. Kentucky, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (prohibiting challenges based on race); Hernandez v. New York, 500 U.S. 352, 369, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion) (indicating that challenges based on ethnicity are prohibited); J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 130-31, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (prohibiting challenges based on gender).

. For purposes of jury selection, defense counsel were designated, respectively, as Defense One (Defendant Warren Savage, the remaining codefendant who is not a party to this appeal), Defense Two (Defendant Ray-Simmons), and Defense Three (Defendant McGouldrick).

. We strongly suspect that counsel used the phrase "save for” rather than "safe from.”

. The dissent declares that we are engaging in a “sleight of hand” in concluding that both Petitioners have preserved the Batson challenge for appellate review because the trial court ruled on March 28, 2012, that an objection made by one defense counsel "would be deemed made by the others.” In the view of the dissent, the court’s ruling was limited to the pretrial motions that occurred later that day. We disagree.
Certainly, as the dissent points out, pretrial motions were litigated later that day. But the ruling concerning preservation of objections was made earlier, in the context of a discussion among the trial court and all counsel concerning the general ground rules that would apply throughout trial. We come to this conclusion by reference to other rulings the court made that same morning. The trial court stated at the outset of the proceedings that “it's my understanding[ ] that we are here to begin trial in this case.” The court then turned to a discussion with counsel about the trial schedule, including how many days the trial would take and at what times the proceedings would start and finish. The court next issued a rule on witnesses, requiring that all witnesses who would be testifying must stay outside of the courtroom, which we have little doubt was intended to apply throughout trial and was not limited to pretrial motions. Similarly, the court ruled that members of the audience who could not contain their emotions would be removed from the courtroom; that ruling, too, cannot reasonably be interpreted as applying solely to pretrial motions on evidentiary issues. The court also confirmed that counsel had secured an order that would allow their clients to wear civilian clothing. That concern, of course, does not arise in the context of pretrial motions litigated before a jury is sworn.
Of particular note is that, moments prior to the ruling at issue, the trial court explained its expectations regarding objections made during trial. The court stated, "All right. Counsel, with regard to objections; objections to a certain extent should be limited to one or two or three word objections.” The court explained that: “I just hate to have the trial continually be delayed by approaching.” Shortly thereafter, counsel for Ms. McGouldrick raised the request for a ruling in favor of joint objections as a "housekeeping matter” made “[i]n terms of the Court’s policy regarding objections.” Viewed in that context, counsel’s request was part of the same discussion as the court’s expectations towards objections generally, and was not limited to the pretrial motions the court entertained that day.